UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| LAMONT D. OWENS, | ) | |
| | ) | |
| Plaintiff-Counter Defendant, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:04-CV-152 |
| | ) | |
| HOWARD HOWE, | ) | |
| | ) | |
| Defendant-Counter Claimant. | ) | |

## MEMORANDUM OF DECISION AND ORDER

### I.  INTRODUCTION

The Plaintiff, Lamont D. Owens ("Owens"), alleges that the Defendant, Howard Howe

("Howe"), violated the Fair Debt Collection Practices Act ("FDCPA" or "the Act"), 15 U.S.C. §

1692, *et seq.*, and since the facts are largely undisputed, promptly moved for partial summary

judgment [DE # 8].

On the other hand, Howe questions this Court's jurisdiction by way of a motion to

dismiss [DE #27], and since he is equally sure that the same facts reveal that he did not

contravene the Act, he also seeks summary judgment [DE # 24].  Indeed, Howe contends in his

Counterclaim that Owens's action was brought in bad faith and for the purpose of harassment. 15

U.S.C. §1692k(a)(3).

Broadly stated, Owens points to four events as the basis for his claim: first, Howe

mistakenly sent to him, rather than the true debtor, an August 26, 2003, dunning letter ("the

August 26 letter") which in itself contained two violations of the FDCPA; he then purportedly

failed to verify the debt when asked to do so; next, he filed a complaint in state court against

Owens, again the wrong one, which also allegedly contained two false and misleading

representations; and finally, pursued the debt even after it became clear he had the wrong

Lamont D. Owens.  The legal gloss Owens adds to these contentions is that: (1) Howe violated

15 U.S.C. § 1692e by using false, deceptive, and misleading representations in his attempt to

collect a debt; (2) engaged in unfair practices prohibited by 15 U.S.C. § 1692f; (3) misstated the

amount of the debt due, which violated 15 U.S.C. § 1692g(a); and (4) failed to verify the debt as

required by 15 U.S.C. § 1692g(b).[1]

For his part, Howe contends that this case should be dismissed under the *Rooker-*

*Feldman* doctrine, or alternatively stayed through *Colorado River* abstention, and if those do not

apply, then he should be granted summary judgment because there was no violation of the Act as

a matter of law.

For the following reasons, the Court DENIES Howe's Motion to Dismiss (Docket # 27),

declines to stay the case, and GRANTS each motion for summary judgment in part and DENIES

each motion in part (Docket # 8 and # 24).

## II. PROCEDURAL AND FACTUAL BACKGROUND

This case started with the August 26 letter Howe sent to Owens's long-time Fort Wayne,

Indiana address:

> Dear Mr. Owens:
> I have been retained by US Bank-LL Receivables Co. to collect from you
> the entire balance, which as of August 25, 2003 is $13,183.80, (the full balance
> owed), that you owe to US Bank-LL Receivables Co., under account number
> 19700153366720001.  Because of interest, late charges, and other charges that
> may vary from day to day, the amount due on the day you pay may be greater.
> Hence, if you pay the amount shown above, an adjustment may be necessary after
> we receive your check, in which event we will inform you before depositing the
> check for collection.  For further information, write the undersigned or call (317)-

---

[1] Owens's Complaint makes reference to alleged harassment in violation of 15 U.S.C. §1692d, but he does not advance that theory on summary judgment and its provisions would not appear to be applicable in any event.

638-1700.

        If you want to resolve this matter without a lawsuit, you must, within one week of the date of this letter, either pay US Bank-LL Receivables Co through this office, the full balance owed (unless you have paid it since your last statement) or call us at (317)638-1700 to arrange a payment plan.  If you do neither of these two things, we will be entitled to file a lawsuit against you, for the collection of this debt, when the week is over.

        Federal law gives you thirty (30) days after you receive this letter to dispute the validity of the debt or any part of it.  If you do not dispute it within that period, we will assume that the debt is valid.  If you do dispute it– by notifying us in writing to that effect– we will, as required by law, obtain and mail to you proof of the debt.  And if, within the same period, you request in writing, the name and address of your original creditor, if the original creditor is different from the current creditor (US Bank-LL Receivables Co.), I will furnish you with that information as well.

        The law does not require us to wait until the end of the thirty (30) day period before suing you to collect this debt.  If however, you request proof of the debt or the name and address of the original creditor within the thirty (30) day period, which begins with your receipt of this letter, the law requires us to suspend our efforts (through litigation or otherwise) to collect the debt until I mail the requested information to you.

                             Sincerely yours,
                             s/Howard Howe

(Owens's Aff., Ex. B.)

On August 29, 2003, Owens's wife mailed a terse response:

    Dear Mr. Howe:
        Please check out your information as this has nothing to do with me.
                        Mr. Owens

(*Id.* at Ex. C.)

Apparently relying on a skip-trace report, Howe's response was to simply sue Owens for LL Receivables Co. ("LL Receivables") on September 19, 2003, in the Allen County Indiana Superior Court, and before long Owens received the complaint entitled  "Complaint on Credit Card." (*Id.* at ¶ 2 and Ex. A.)   LL Receivables's complaint sought $10,607.71 in principal, prejudgment interest of $2,643.51 from February 1, 1999, to the date of filing, additional interest

thereafter, and $2,125.00 in attorney fees. (*Id.*) Oddly, however, the Complaint referred to "Household Bank" (not "US Bank" as stated in the August 26 letter), cited a different amount due, and incorrectly alleged that the indebtedness was for credit-card purchases under a card-holder agreement. (*Id.*)

Owens's filed an Answer and Counterclaim, alleging that the complaint: (1) was legally and factually baseless, and therefore "unreasonable, frivolous, and malicious," entitling Owens to attorney fees under Indiana Code § 34-52-1-1; and (2) violated the FDCPA entitling Owens to $1,000.00 plus reasonable attorney fees. (*Id.* at Ex. B.)

When Howe refused to drop the lawsuit, Owens moved for summary judgment in state court against LL Receivables both on the complaint and his Counterclaim for attorney fees under Indiana law. (*Id.* at Ex. L.) After an April 30, 2004, hearing on the motion, but before the state court could rule, Howe dismissed the complaint. (Pl.'s Reply Exs. 1-3.) With only the counterclaim left, the state court, although acknowledging that it was a "close call," denied Owens's motion, because "based on the evidence presented so far," it could not say that pursuing the case had been unreasonable, groundless or frivolous as a matter of law, given Howe's ostensible reliance on a skip-trace report identifying Owens. (*Id.* at Ex. 3.) Therefore, Owens's claims against LL Receivables remain pending in state court.

Here, however, Owens's target is Howe, and in his present motion he asks the Court to declare Howe liable under the FDCPA as a matter of law.

For his part, Howe remains unrepentant, asserting that he is still not sure he had the

wrong man.[2]  Although we will eventually reach the merits, we start with Howe's Motion To Dismiss.[3]

### III.  HOWE'S  MOTION TO DISMISS

**A.**     **Howe incorrectly applies the *Rooker-Feldman* doctrine.**

Although the basis for Howe's Motion To Dismiss is unclear, since he invokes the *Rooker-Feldman* doctrine, he apparently is contending that we do not have subject matter jurisdiction.  *See Frederiksen v. City of Lockport*, 384 F.3d 437, 439 (7th Cir. 2004)(when *Rooker-Feldman* applies, the only proper disposition is dismissal under Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction).

Simply stated, *Rooker-Feldman* bars federal-district-court review of state-court judgments.  *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).  The doctrine precludes federal jurisdiction because no matter how erroneous or unconstitutional the state-court judgment may be, the Supreme Court of the United States is the only federal court that has jurisdiction to review a state-court judgment.  *Rooker*, 263 U.S. at 415-16; *Zurich Am. Ins. Co. v. Superior Court for the State of Cal.,* 326 F.3d 816, 821 (7th Cir. 2002).

"In its most straight-forward presentment, the *Rooker-Feldman* doctrine bars federal jurisdiction when the federal plaintiff alleges that her injury was caused by a state court

---

[2] Howe's lack of certitude blinks at the record, which reflects that Owens is nearly 20 years older than the reported age of the true borrower.

[3] After first generally admitting that he is a debt collector, (Answer ¶ 4), Howe now wants to amend his Answer to assert that he is not, and to file a Motion To Dismiss on that basis, too. As the Court explained in an October 15, 2004, Order, that issue will now be considered in connection with the motions for summary judgment.

judgment."  *Remer v. Burlington Area Sch. Dist.*, 205 F.3d 990, 998 (7th Cir. 2000); *see, e.g.*,

*Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999); *Centres, Inc. v. Town of*

*Brookfield*, 148 F.3d 699, 702 (7th Cir. 1998); *Garry v. Geils*, 82 F.3d 1362, 1365-66 (7th Cir.

1996).

  The *Rooker-Feldman* doctrine, however, is not limited to just those claims that allege that

the state-court judgment itself caused the federal plaintiff's injury, but also precludes federal

jurisdiction over claims "inextricably intertwined" with a state-court determination even if they

were never argued in state court.  *Remer,* 205 F.3d at 996; *Epps v. Creditnet, Inc.*, 320 F.3d 756,

759 (7th Cir. 2003); *Lewis v. Anderson*, 308 F.3d 768, 772 (7th Cir. 2002).

  Ultimately, however, the crucial point is whether "the district court is in essence being

called upon to review the state-court decision."  *Feldman*, 460 U.S. at 483-84, n. 16.  "The

pivotal inquiry is 'whether the federal plaintiff seeks to set aside a state-court judgment or

whether he is, in fact, presenting an independent claim.'" *Long*, 182 F.3d at 555 (quoting

*Kamilewicz v. Bank of Boston Corp.*, 92 F.3d 506, 510 (7th Cir. 1996).

  With the question thus framed, it immediately becomes apparent that the *Rooker-*

*Feldman* doctrine does not apply because Owens's claims and alleged injuries do not arise from

any state-court judgment, nor does he argue they do.  Indeed, the only order issued by the state

court was a dismissal of LL Receivables's claim with prejudice, keeping alive, at the same time,

Owens's counterclaim for a frivolous lawsuit, and he is certainly not asking this Court to review

or set aside that decision.[4]  *Cf.*, *Feldman*, 460 U.S. at 483-84, n. 16.

Rather, Owens's claim is squarely grounded upon Howe's actions as an alleged "debt collector" prior to the ruling.  *Long*, 182 F.3d at 555.  Therefore, *Rooker-Feldman* does not apply, and the Court otherwise has jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d).

**B.      *Colorado River* abstention does not apply.**

Alternatively, Howe says that this case should be stayed or dismissed under the abstention doctrine articulated in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976), because it would be "wise judicial administration" given the allegedly concurrent state court proceeding.  Abstention, however, is appropriate only in "exceptional circumstances," *id.* at 813, because federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," *id.* at 817.  In other words, there is a general presumption against abstention.  *AXA Corporate Solutions v. Underwriters Reinsurance Corp.*, 347 F.3d 272, 278 (7th Cir. 2003); *Sverdrup Corp. v. Edwardsville Cmty. Unit Sch. Dist. No. 7*, 125 F.3d 546, 549-50 (7th Cir. 1997).

In any event, the first question to ask is whether the state-court case is truly parallel to this one.  *AXA Corporate Solutions*, 347 F.3d at 278; *Caminiti & Iatarola, Ltd. v. Behnke Warehousing Inc.*, 962 F.2d 698, 700 (7th Cir. 1992).  Suits are parallel if they involve "substantially the same parties . . . litigating substantially the same issues simultaneously in two

---

[4]The Court assumes without deciding that *Rooker-Feldman* applies to interlocutory orders.  *See Zurich*, 326 F.3d at 821, n. 4. On the other hand, if the doctrine only applies to final judgments, then that is an additional basis for rejecting it here.

fora." *AAR Int'l, Inc. v. Nimelias Enter. S.A.*, 250 F.3d 510, 518 (7th Cir. 2001).  If the actions are

not parallel, *Colorado River* does not apply.  *Id.*  If the suits are parallel, however, the court must

then take into consideration ten separate factors in deciding whether to abstain.[5]  *AXA Corporate*

*Solutions*, 347 F.3d at 278.

As discussed in connection with the *Rooker-Feldman* doctrine, Owens's action here and

the one he is maintaining on a counterclaim in state court are not parallel because they clearly

arise from a separate set of facts, different legal theories and even different parties.  *See Indiana*

*Lumbermen's Mut. Ins. Co. v. Wild*, No. 93-C-5312, 1994 U.S. Dist. WL 411743, at \*2 (N.D. Ill.

Aug. 4, 1994)(concluding that it was not appropriate to abstain when different parties were

litigating different issues in two different forums); *Agan v. Katzman & Korr, P.A.,* No. 03-62145,

2004 U.S. Dist. WL 555257, at \*2 (S.D. Fla. March 16, 2004)(refusing to abstain where the

FDCPA claims presented in federal court raised different legal and factual issues and were

governed by a different body of law than the state-court claim on the underlying debt).

Moreover, resolution of the state-court case will not dispose of the FDCPA claims presented

here**.**  Because the two cases are not parallel, *Colorado River* abstention does not apply,  *AAR*

*Int'l, Inc.*, 250 F.3d at 518, and Howe's Motion To Dismiss is therefore DENIED.[6]  Accordingly,

---

[5]The ten factors have been cataloged as follows: (1) whether the state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained in the concurrent forums; (5) the source of governing law, state or federal; (6) the adequacy of state-court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim.  *AXA Corporate Solutions*, 347 F.3d at 278.

[6]Even if the cases are parallel, the ten-factor analysis does not lead to either a stay or dismissal.  In fact, most of the factors are either inapplicable or neutral, and those that do apply suggest that no stay should be imposed. For example, the third, fifth and eighth factors all lead to the conclusion that no stay should be ordered because this case involves different parties and law.  Moreover, because Owens could not have removed the state-court case here,

the Court will proceed to address Howe's defenses in the context of summary judgment.

## IV.  SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment may be granted only if there are no disputed genuine issues of material fact.  *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).  When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Id.*  The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).  If the evidence is such that a reasonable fact-finder could return a verdict in favor of the nonmoving party, summary judgment may not be granted.  *Payne*, 337 F.3d at 770.  A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true[,]" as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.*  However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771.

When both parties move for summary judgment, the court must "construe all inferences in favor of the party against whom the motion under consideration is made." *O'Regan v.*

---

the ninth factor does not support a stay either.  Finally, Owens's FDCPA claim has genuine merit.  *See Rolls-Royce PLC v. Luxury Motors, Inc.*, No. 03-C-5953, 2004 U.S. Dist. WL 1375540, at *4 (N.D. Ill. June 17, 2004)(conducting ten-factor analysis and concluding that abstention under *Colorado River* was unwarranted); *Enfra LLC v. Caporale*, No. 02-C-8856, 2003 U.S. Dist. WL 21982154, at *4-5 (N.D. Ill. May 20, 2003)(same); *Suzik v. Southern Pacific Transp. Co.*, No. 94-C-7793, 1997 U.S. Dist. WL 156545, at *4 (N.D. Ill. April 1, 1997)(same).

*Arbitration Forums, Inc.,* 246 F.3d 975, 983 (7th Cir. 2001) (quoting *Hendricks-Robinson v. Excel Corp.,* 154 F.3d 685, 692 (7th Cir. 1998)).  With regard to an affirmative defense on which the defendant bears the burden, the defendant must present evidence to "support each element of its defense and demonstrate the lack of any genuine issue of material fact with regard thereto." *Rushing v. Kansas City So. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999).  However, summary judgment may be granted only when "every one of the defenses asserted are legally insufficient." Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2734.  "Since a single valid defense may defeat recovery, [a] claimant's motion for summary judgment should be denied when any defense presents significant fact issues that should be tried."  *Id.*

### V.  HOWE'S AFFIRMATIVE DEFENSES

We now turn to Howe's three unhelpful defenses, *viz.* the case should be dismissed based on either *res judicata* or collateral estoppel,[7] and he is not a "debt collector" under the Act.

**A.** *Res judicata* **and collateral estoppel do not apply.**

### 1. Without a Final Judgment in State Court, There Can be no *Res Judicata.*

*Res judicata* constitutes an affirmative defense and is dependent upon the Full Faith and Credit Statute, 28 U.S.C. § 1738, which requires that federal courts give state-court judgments the same preclusive effect they would have in state court.  *Long,* 182 F.3d at 560 (citing *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 381 (1985)).  Stated most simply,

---

[7]Howe does not tell us whether he wants a dismissal or summary judgment based on *res judicata*, but when the defense is raised in a motion to dismiss, the preferred course is to convert it to a motion for summary judgment as the court made clear in its October 15, 2004, Order.  *See D & K Properties Crystal Lake v. Mutual Life Ins. Co. of New York*, 112 F.3d 257, 259 n. 1 (7th Cir. 1997)("Because *res judicata* is an affirmative defense that often requires the court to consider matters outside the complaint, the district court appropriately construed [Defendant's] motion to dismiss as a motion for summary judgment").  *See* Fed. R. Civ. P. 12(b).

"[w]hen the state judgment would not preclude litigation in state court of an issue that turns out to be important to a federal case, the federal court may proceed; otherwise not." *Id*. (quoting *GASH Assocs. v. Village of Rosemont*, 995 F.2d 726, 728 (7th Cir.1993)).

Therefore, we look to Indiana law to determine whether the state court entered a judgment that bars Owens's federal claim. *Licari v. City of Chicago*, 298 F.3d 664, 666 (7th Cir. 2002). Indiana law holds that "[t]he doctrine of *res judicata* bars litigation of a claim after a final judgment has been rendered in a prior action involving the same claim between the same parties or their privies." *Small v. Centocor, Inc.*, 731 N.E.2d 22, 26 (Ind. Ct. App. 2000) (emphasis added). " The following four requirements must be satisfied for a claim to be precluded under the doctrine of *res judicata*: 1) the former judgment must have been rendered by a court of competent jurisdiction; 2) the former judgment must have been rendered on the merits; 3) the matter now in issue was, or could have been, determined in the prior action; and 4) the controversy adjudicated in the former action must have been between the parties to the present suit or their privies." *Id.* (emphasis added).

Instantly we see that "[a] prerequisite to a plea of *res judicata* is that the prior adjudication must have been a final judgment on the merits." *Martin v. Indiana Bell Telephone Co., Inc.*, 415 N.E.2d 759, 761 (Ind. Ct. App. 1981)(citing *England v. Dana Corp*., 259 N.E.2d 433 (Ind. Ct. App. 1970)). This ingredient is missing here because the state court's denial of Owens's motion for partial summary judgment was merely an interlocutory order without *res judicata* effect. *Id.* (citing *Kirby v. P. R. Mallory & Co.,* 489 F.2d 904 (7th Cir. 1973)); *Cardiology Assocs. of Northwest Indiana, P.C. v. Collins*, 804 N.E.2d 151, 154-55 (Ind. Ct. App. 2004).

11

Finally, Howe's October 25, 2004, response brief offers the specious assertion that the state-court ruling is *res judicata* concerning any violation of the FDCPA because that court "has already determined insufficient evidence exists to hold your Defendant liable for frivolous, unreasonable, or groundless litigation. . . .[.]"  Of course, the state court did no such thing; it merely concluded that it could not rule in Owens's favor as a matter of law, probably due to Indiana's rejection of the *Celotex* trilogy, *see, e.g., Jarboe v. Landmark Cmty. Newspapers, Inc*., 644 N.E.2d 118, 123 (Ind.1994)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)), but it hardly absolved Howe of liability.  Therefore, *res judicata* does not apply as a matter of law.

**2. Collateral Estoppel is Also Inapplicable as a Matter of Law**

Howe also asserts that collateral estoppel, or issue preclusion, bars Owens's claims.  In the most general sense, issue preclusion limits the litigation of issues that have been decided in a previous action.  *McNealy v. Caterpillar, Inc*. 139 F.3d 1113, 1116 (7th Cir. 1998).  Whether a judgment of a state court results in issue preclusion generally depends upon the law of that state. *Id.* (citing *Rekhi v. Wildwood Indus.,* 61 F.3d 1313, 1317 (7th Cir.1995)).  However, as we shall see, even if the federal law of issue preclusion would apply, the result is the same.

Issue preclusion under Indiana law bars the subsequent re-litigation of a fact or issue necessarily adjudicated in a prior cause of action, meaning that the first adjudication is held to be conclusive even if the second action is on a different claim.  *Infectious Disease of Indianapolis, P.S.C. v. Toney*, 813 N.E.2d 1223, 1228 (Ind. Ct. App. 2004)(citing *Small,* 731 N.E.2d at 28).

For collateral estoppel to apply, there must be: (1) a final judgment on the merits in a court of competent jurisdiction; (2) identity of issues; and (3) a showing that the party to be estopped was either a party, or the privity of a party, in the prior action.  *Id*.

12

Collateral estoppel under federal law applies if there are "identity of claims, identity of parties, and a prior final judgment on the merits." *Perry v. Globe Auto Recycling, Inc.*, 227 F.3d 950, 952 (7th Cir. 2000); *see also Havoco of America, Ltd. v. Freeman, Atkins & Coleman, Ltd.*, 58 F.3d 303, 307 (7th Cir. 1995)(issue preclusion requires that: (1) the issue sought to be precluded is the same as that involved in the prior action; (2) the issue was actually litigated; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom estoppel is invoked was fully represented in the prior action)).

We are not sure what Howe is suggesting is precluded here by the state-court ruling, although it appears he thinks that because he allegedly relied on a skip-trace report, a point noted by the state court in denying Owen's motion for summary judgment, Owens is somehow estopped from contesting Howe's *bona fide* error defense. 15 U.S.C. § 1692k(c).  This argument is clearly baseless.

Even under the definition of "final," as used in connection with the collateral estoppel doctrine, no preclusive final judgment has been entered.  Of course, to apply collateral estoppel, a prior decision need not be "final" within the meaning of 28 U.S.C. § 1291, but it at least should be final in that it precludes further litigation on the same issue.  *Amcast Indus. Corp. v. Detrex Corp.*, 45 F.3d 155, 158 (7th Cir. 1995).  That analysis requires looking at such factors as "the nature of the decision (*i.e.*, that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review."  *Id.*

 Clearly, the state-court decision reveals its tentative nature, that "based on the evidence presented so far. . . [,]" it could not declare Howe liable as a matter of law for pursuing a "frivolous, unreasonable or groundless" lawsuit.  Thus, that issue, which by the way is also

different from the issues presented here, remains pending in state court.  *Small*, 731 N.E.2d at 28

(collateral estoppel requires, *inter alia*, an identity of issues).  Therefore, since no final judgment

has been entered, issue preclusion does not apply, *Infectious Disease,* 813 N.E.2d at 1228; *Perry,*

227 F.3d at 952, and we move to the final hurdle before reaching Owens's claims.[8]

**B.       Howe is a Debt Collector as a Matter of Law.**

Only "debt collectors" can be liable under the FDCPA, 15 U.S.C. § 1692k,

 and they are generally defined as "any person who . . .  regularly collects . . . directly or

indirectly, debts owed . . . or due another," 15 U.S.C. § 1692a(6); *Heintz v. Jenkins*, 514 U.S.

291, 299 (1995)(holding that an independent attorney who engages in consumer debt collection

activity is a debt collector under the Act).

Although Howe's Answer seems to generally admit that he is a "debt collector" (Answer

¶ 4), he now claims to fall under a statutory exception as an officer of LL Receivables, a

purported creditor of Owens, and supports this by declaring that  "at all times relevant [LL

Receivables] has been the owner of the Owens account."  15 U.S.C. § 1692a(6)(A).

Although the Act defines a "creditor" as  "any person . . .  to whom a debt is owed,"  it

goes on to exclude "any person to the extent that he receives an assignment or transfer of a debt

in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. §

1692a(4).

 Stated simply, assignees are treated as debt collectors if the debt was in default when

---

[8] Howe argues the irrelevant point that because he is an officer of LL Receivables, there is an identity of
parties between the state court proceedings and this case. However,  collateral estoppel is only concerned with
whether the party to be estopped is the same.  *Infectious Disease,* 813 N.E.2d at1228.

they acquired it, but as creditors if it was not. *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003)(citing *Bailey v. Security Nat'l Servicing Corp.,* 154 F.3d 384, 387 (7th Cir.1998); *Whitaker v. Ameritech Corp.*, 129 F.3d 952, 958 (7th Cir. 1997); *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403-04 (3d Cir. 2000); *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106-07 (6th Cir. 1996); *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985)).

Here, the debt was clearly in default when ultimately assigned to LL Receivables. We know this because Howe's affidavit tells us that LL Receivables purchased the account from U.S. Bank sometime prior to August 18, 2003.  (Howe Aff. ¶¶ 3, 5-7.)  Also, Howe's affidavit filed in state court refers to his December 31, 2003, letter that explains that LL Receivables purchased  the account after it was charged off by US Bank on February 1, 1999, and after the collateral for the loan (a 1992 Nissan automobile) had been repossessed and sold at private sale. (Owens's Aff. Exs. C and P.)  According to the original financing agreement, taking possession of the vehicle, selling it and declaring a deficiency (the basis for the debt) can only occur in the event of a default.  (Howe Aff. Ex. B.)  Accordingly, the only inference that can be drawn from this record is that the debt had long been in default when ultimately assigned to LL Receivables, making it a debt collector, not a creditor.  *Schlosser*, 323 F.3d at 536.

The underlying basis for the statute is consistent with this reading, given that LL Receivables did nothing to service the debt, and acquired it solely for the purpose of collection. *Schlosser*, 323 F.3d at 536 ("If the one who acquired the debt continues to service it, it is acting much like the original creditor that created the debt.  On the other hand, if it simply acquires the debt for collection, it is acting more like a debt collector.").  Indeed, Howe's prompt, perhaps

15

even premature filing of a lawsuit, demonstrates that LL Receivables had no desire to preserve goodwill or any intent to service the debt. *Id.*

Therefore, because LL Receivables was not a creditor as a matter of law, Howe is a debt collector. 15 U.S.C. §§ 1692a(4); 1692a(6)(A). Accordingly, Howe's motion for leave to amend his Answer to plead an affirmative defense [DE #51] will be DENIED.[9]

## VI.  OWENS' FDCPA CLAIMS

We finally reach, and discuss in turn, the four events Owens says violated the Act: (1) the August 26 letter; (2) Howe's failure to verify the debt upon written request; (3) the allegedly flawed and improvidently filed state-court complaint; and (4) Howe's unfounded pursuit of him in state court.

One of the purposes of the FDCPA was to eliminate the recurring problem of debt collectors dunning the wrong person. S. Rep. No. 95-382  at 4 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1699.  To this end, the Act imposes, among other things, the requirement that a debt collector advise a debtor of his right to dispute a debt and demand verification, 15 U.S.C. § 1692g, and generally prohibits them from making false and misleading statements, *id.* § 1692(e), or using "unfair or unconscionable means," such as claiming unauthorized fees, to collect a debt.  *See id.* § 1692f.

Throughout our discussion, the proper viewpoint is that of the unsophisticated consumer. *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562 (7th Cir. 2004); *Veach v. Sheeks,* 316 F.3d 690, 692 (7th Cir. 2003); *Bartlett v. Heibl,* 128 F.3d 497, 500 (7th Cir. 1997).  In short, we are talking

---

[9]Howe's August 26 letter says that he had been retained by both US Bank and LL Receivables; however, Howe does not claim to be an officer of US Bank for purposes of § 1692a(6)(A).

16

about a debtor who "is uninformed, naive, or trusting[.]"  *Veach,* 316 F.3d at 693 (internal

quotation marks omitted).  Nevertheless, an unsophisticated consumer possesses "rudimentary

knowledge about the financial world" and is "capable of making basic logical deductions and

inferences."  *Pettit v. Retrieval Masters Creditors Bureau, Inc.,* 211 F.3d 1057, 1060 (7th Cir.

2000).  With these principles in mind, we turn to the first event.

**A. THE AUGUST 26 LETTER.**

Owens contends that Howe's August 26 letter violated the FDCPA by first misstating the

amount due, 15 U.S.C. § 1692f(1); 15 U.S.C. §§ 1692g(a)(1); and then by failing to disclose that

Howe was a debt collector and that any information would be used for that purpose,  15 U.S.C. §

1692e(11).  Finally, Owens claims that simply sending the letter to him, rather than the true

debtor, violated the Act. 15 U.S.C. 1692e(2)(A).

**1. The August 26 letter did not misstate the "amount of the debt."**

Owens says that when the letter stated the debt to be $13,183.80, this must have been

wrong because the state court complaint alleged a balance of $15,367.22, consisting of: (1)

$10,607.71 in principal, (2) interest from February 1, 1999, in the amount of $2,643.51, and (3)

attorney fees of $2,125.00.  This leads Owens to somehow conclude that the $13,183.80 amount

included attorney's fees, in violation of §§ 1692g(a)(1) and 1692f(1).

In response, Howe maintains that the initial amount he attempted to collect, and what is

reflected in the August 26 letter, is unpaid principal and interest only – he did not seek attorney's

fees until he actually filed the case in state court.  This assertion is clearly correct, making

§1692f(1) inapplicable, given that the letter reflects only principal and the calculation of interest.

Therefore, Owens's claim must be that the letter fails to specify that the $13,183.80 includes

17

both principal and interest and thus misstates "the amount of the debt[.]" [10] §1692g(a)(1).

 To oversimplify, in *Miller v. McCalla, Raymer, Cobb, Nichols & Clark*, 214 F.3d 872, 875-76 (7th Cir. 2000), the Seventh Circuit concluded that collection letters must disclose both principal and interest.  Because the letter in *Miller* listed only the amount of the unpaid principal, and told the debtor to call for the payoff, it violated the Act because the "unpaid principal balance is not the debt; it is only a part of the debt; the Act requires statement of the debt."  *Id.*

Nevertheless,  *Miller* offered debt collectors some future safe-harbor language to use when seeking to collect both principal and interest, *id.* at 876, and Howe's letter follows it faithfully.

Although Owens also relies on *Chuway v. National Action Financial Services*, 362 F.3d 944, 947 (7th Cir. 2004), that case is inapposite.  There, a dunning letter told the debtor that the amount due was $367.42, and to call for a current balance.  The letter was held to be confusing, however, because even though the debt collector had been hired to obtain only $367.42, he had left the impression that there was actually more due.  *Id.* at 946.  Here, however, there was more due, and *Chuway* reinforces *Miller,* that a FDCPA violation does not occur when the debt collector uses, as Howe did here, the safe-harbor language.  *Chuway*, 362 F.3d at 949.

Therefore, Howe's letter did not violate 15 U.S.C. § 1692g(a)(1) as a matter of law.

**2.  The Letter Violates  15 U.S.C. § 1692e(11) by Omitting a Critical Phrase.**

The Act requires the debt collector to disclose in the initial written communication that he "is attempting to collect a debt and that any information obtained will be used for that purpose[.]" 15 U.S.C. § 1692e(11); *Tolentino v. Friedman*, 46 F.3d 645, 650 (7th Cir. 1995).

---

[10]The financing agreement clearly authorized interest, so the letter did not violate 15 U.S.C. §1692f(1) by including that component.

Although the exact statutory language is not required, its substance must be conveyed.  *Ross v. Commercial Fin. Serv., Inc.,* 31 F.Supp. 2d 1077 (N.D. Ill. 1999); *Altergott v. Modern Collection Techniques, Inc.*, No. 93-C-4312, U.S. Dist., 1994 WL 319229, at *2 (N.D. Ill. June 23, 1994).

Owens asserts that Howe's letter falls short because it did not disclose (1) that Howe is a debt collector who is attempting to collect a debt; and (2) that any information obtained would be used for that purpose.  Both disclosures are required, even if the debt collector is not seeking any information.  *Emanuel v. American Credit Exch.*, 870 F.2d 805, 808 (2d Cir. 1989); *Altergott* 1994 WL 319229 at *2.

For his part, Howe maintains that the letter is sufficient because it is consistent with the Seventh Circuit's effort in *Bartlett*, 128 F.3d at 501-02, to craft safe-harbor language for debt collectors.

Concerning the first point, Howe's letter lists the creditor's name, refers to a "Debt owed" and discloses that  Howe has been retained by the creditor to collect a specific amount owed.  This is sufficient to notify even the most unsophisticated consumer that this is an effort to collect a debt. 15 U.S.C. § 1692e(11).

Notably absent, however, is anything that satisfies the second requirement.  The only route to compliance with § 1692e(11) is to include specific language in the letter, such as "we are a debt collector, attempting to collect a debt and any information obtained will be used for that purpose."  *Berndt v. Fairfield Resorts, Inc.*, No. 04-C-0049, 2004 U.S. Dist. WL 1946315, at *8 (W.D.Wis. Aug. 31, 2004)(citing *Tolentino,* 46 F.3d at 650)(finding a violation of § 1692e(11) when defendant failed to include required language).  Therefore, Howe's letter violates 15 U.S.C. § 1692e(11) unless he can show that his use of the *Bartlett*-styled letter is an

19

adequate substitute or constitutes a defense.

In *Bartlett*, the Seventh Circuit was not concerned with a violation of § 1692e(11), which explains why it warned debt collectors that it was not certifying the proposed safe-harbor "letter as proof against challenges based on other provisions of the statute; those provisions are not before us." *Bartlett,*128 F.3d at 501-02.  Clearly then, no debt collector could rely on a letter modeled after *Bartlett* as satisfying § 1692e(11), nor can that case form the basis for a *bona fide* error defense under 15 U.S.C. § 1692k(c).  *Berndt*, 2004 WL 1946315 at *9 (bona fide error defense does not apply to violations of 15 U.S.C. § 1692e(11)).

Consequently, Owens's motion for partial summary judgment on the issue of liability under 15 U.S.C. § 1692e(11) will be granted.

### 3. The Letter to the Wrong Lamont D. Owens Violated 15 U.S.C. § 1692e(2)(A)

The Act declares it a violation to make a "false representation of . . . the character, amount, or legal status of any debt[.]" 15 U.S.C. §1692e(2)(A).

Indeed, merely dunning a person who is not legally obligated to pay the debt makes the debt collector liable under that statute as a matter of law because it is, *ipso facto*, a false representation about the status or character of the debt.  *See Beattie v. D.M. Collections, Inc*., 754 F.Supp. 383, 392 (D.Del.1991)*.*

While some cases hold that the statutory term "false representation" under § 1692e(2)(A) requires that the misrepresentation be intentional, *Beattie*, 754 F.Supp. at 392-94; *see also Ducrest v. Alco Collections, Inc.* 931 F.Supp. 459, 461-62 (M.D. La. 1996); *Hubbard v. National Bond & Collection Assocs.* 126 B.R. 422, 427 (D. Del. 1991), the Seventh Circuit has concluded that a violation of 15 U.S.C. § 1692e(2) leads to liability even when the false representation is

20

unintentional.  *Turner v. J.V.D.B. Assocs.*, 330 F.3d 991, 998 (7th Cir. 2003); *Gearing v. Check Brokerage Corp.* 233 F.3d 469, 472 (7th Cir. 2000)(citing *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996)(because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages)).[11]

Therefore, the remaining question is not what Howe knew, but whether his August 26 letter, and later the state-court complaint, both targeting the wrong person, would deceive or mislead an unsophisticated, but reasonable, consumer.  *Turner*, 330 F.3d at 995(citing *Gammon v. GC Servs. Ltd. P'Ship*, 27 F.3d 1254, 1257 (7th Cir. 1994).  In that regard, Howe's objectively false statements lead directly to the only possible inference, that a reasonable, unsophisticated consumer would undoubtedly be misled by both the August 26 letter and the complaint. Therefore, Howe is strictly liable as a matter of law under 15 U.S.C. §1692e(2)(A) and summary judgment will be granted to Owens on the issue of liability.[12]

## B. HOWE FAILED TO VERIFY THE DEBT UPON WRITTEN REQUEST.

Owens next argues that Howe violated 15 U.S.C. § 1692g(b) by failing to verify the debt before  continuing his collection activities.  That section describes what the debt collector must do when the consumer disputes the debt:

> If the consumer notifies the debt collector in writing . . . that the debt, . . . is disputed, . . . the debt collector shall cease collection of the debt, . . .  until the debt collector obtains verification of the debt . . . , and a copy of such verification

---

[11]Although the issue of Howe's intent would ordinarily still be relevant in connection with his *bona fide* error affirmative defense under § 1692k(c), he offered no evidence, Fed. R. Civ. P. 56(e), that would support even an inference that his failure to identify and sue the proper party occurred notwithstanding the maintenance of procedures to avoid such an event.

[12]In contrast, a false representation is not enough to support a claim under §1692f.  See, *Blum v. Lawent*, No. 02-C-5596, 2003 U.S. Dist. WL 22078306, at *9 (N.D. Ill. Sept. 8, 2003)(citing *Turner*, 330 F.3d at 998).

. . . is mailed to the consumer by the debt collector.

15 U.S.C. § 1692g(b).

Thus, if a debt is disputed, a debt collector must either: (1) provide verification of it

before continuing collection activities or (2) cease collection efforts entirely.  *Jang v. A.M.*

*Miller and Assocs.*, 122 F.3d 480, 483 (7th Cir. 1997).

Howe acknowledges receiving written notification, and also admits he failed to verify

the debt, but claims he did not have a duty to do so because Owens's wife wrote the letter, not

Owens.  Howe's argument, with no citation to any case law, is that while the FDCPA defines

"consumer" as including the consumer's spouse, § 1692c(d), that definition is limited to §1692c,

which means that Congress did not intend to extend the definition to any other section of the Act,

including § 1692g(b).

Howe's pinched reading of the Act ignores that at the time he received the letter, he

could not have known it had actually been typed by Owens's wife.  In any event, the

communication was clearly sent at Owens's direction, (Monica Owens's Aff. ¶6), and that is all

the Act requires.  *See, e.g., Zaborac v. Phillips and Cohen Assocs.*, 330 F. Supp. 2d 962, 966-67

(N.D. Ill. 2004)(a consumer's lawyer may send debt-validation request to debt collector on

behalf of consumer).  Accordingly, Howe was under an obligation to provide verification.

Howe also contends that the verification requirement is superfluous because even if he

had provided verification, he still would have filed suit.  This argument simply misses the point

of the statute, if he provides verification he is likely to receive information that dissuades him

from bringing suit, or at least forestalls suit until even more verification is received.  Indeed, one

of the reasons for the verification requirement is to put an end to erroneous dunning at an early

22

point.  *Weinberg v Arcventures, Inc.*, No. 96-C-0556, 1996 WL 385951 at *2-3 (N.D.Ill. July 3, 1996)(citing *Beattie,* 754 F. Supp. at 390).

Alternatively, Howe asserts the *bona fide* error defense which relieves a debt collector of liability if he can show by a preponderance of the evidence that the violation was unintentional and  "resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid [the] error."  15 U.S.C. § 1692k(c); *see Jenkins*, 124 F.3d at 834.

To determine whether the defendant is entitled to the *bona fide* error defense, the first question is whether the statutory violation was intentional.  *Jenkins*, 124 F.3d at 831.  Howe asserts that because he allegedly misfiled Owens's validation request letter, and because Owens offers no evidence to the contrary, the error must be considered unintentional.  Indeed, Howe has at least raised an inference that his failure to validate the debt was unintentional.

Nevertheless, to avail himself of the defense, Howe must also show that the failure to send a debt verification to Owens occurred "notwithstanding the maintenance of procedures reasonably adapted to avoid [that] error."  15 U.S.C. § 1692k(c); *Jenkins*, 124 F.3d at 834.  Importantly, the "mere assertion of good intent, absent a factual showing of actual safeguards reasonably adopted to avoid violations of the FDCPA, is insufficient to sustain the defense." *Oglesby v. Rotche,* No. 93-C-4183, U.S. Dist. 1993 WL 460841, at *9 (N.D.Ill. Nov. 5, 1993); *see also Green v. Hocking,* 792 F.Supp.1064, 1066 n. 5 (E.D. Mich. 1992) (rejecting *bona fide* error defense where defendant merely asserted the error was unintentional without supplying evidence of procedural safeguards).

In an apparent attempt to meet his burden, Howe submitted a wholly inadequate, conclusory affidavit, *Alexander v. Unlimited Progress Corp.*, No. 02-C-2063, U.S. Dist. 2004

23

WL 2384645, at *5 (N.D. Ill. Oct. 20, 2004), stating that Owens's written request was not "properly processed in the ordinary course of processing requests to validate." (Howe Supp'l. Aff. ¶ 3.) While we do not know what Howe considers as the proper means for processing written verification requests, it apparently involves his staff "freezing" the file, with the written request then to go to him. (*Id.*) Howe says, however, in this instance he either put the letter in the file of another Owens, or possibly put it in the correct Owens's file, but in any event failed to send the requested verification. (*Id.*)

This recitation of so-called procedures falls well short of the elaborate and extensive system present in *Jenkins*, and one specifically designed to avoid the very violation of the Act at issue there. *Jenkins*, 124 F.3d at 834. In sharp contrast, Howe does not tell us what procedures he has in place when told he has the wrong person to actually assure compliance with § 1692g(b), or even what procedures are in place for any verification. In short, Howe tells us his office did not properly process Owens's request, but that is not evidence, because even "proper processing" in Howe's office might not be "reasonably adapted" to avoid such an error.[13] 15 U.S.C. § 1692k(c); *Jenkins*, 124 F.3d at 834.

Moreover, while Howe cryptically says that his staff is to "freeze" a file upon receipt of a verification request, there is no evidence what steps are taken to do that, and perhaps more importantly, he does not tell us how "freezing" a file results in sending a verification to the debtor. (*Id.*)

Thus, Howe has offered no evidence on his affirmative defense, Fed. R. Civ. P. 56(e),

---

[13] It is telling that Howe had over 16 "Owens" who were alleged debtors at the time, yet apparently failed to send a verification to *any* of them.

that would support even an inference that his failure to verify the debt was a *bona fide* error.  15

U.S.C. § 1692k(c).  And since he admits to otherwise failing to comply with the requirements of

15 U.S.C. § 1692g(b), summary judgment in favor of Owens must be entered on this claim.

### C.  THE STATE COURT COMPLAINT

Owens makes two claims about the contents of the state-court complaint Howe filed: (1)

it violated the Act, 15 U.S.C. § 1692(f)(1), by seeking attorney fees without offering a legal basis

for them (*i.e.*, the underlying financing agreement), and apart from that, Howe's claimed

entitlement to $2,125.00 in fees cannot be part of the "debt" until actually awarded by the state

court; and (2) it falsely, deceptively and misleadingly, 15 U.S.C. § 1692e, referred to credit-card

indebtedness, when the debt was actually on a deficiency from a repossessed automobile.

Moreover, and apart from the contents of the state-court complaint, Owens contends that

by simply suing him, rather than the true debtor, Howe violated the Act.  15 U.S.C. 1692e(2)(A).

These claims will be addressed in turn.

### 1. The State-Court Complaint's Request for Attorney Fees

The upshot of Owens' initial argument is that because Howe failed to attach to his state-

court complaint any agreement entitling him to an award of fees, the request for them in the

complaint violated §§ 1692e and 1692f.  More precisely, Owens says that by attempting to

collect attorney fees which were not "expressly authorized," at least on the face of the complaint,

Howe both misrepresented the "character," and "legal status" of the debt, § 1692e(2)(A), and

violated §1692f(1).

The problem with this first argument is that it attempts to engraft Indiana procedural

rules, *see* Ind. T.R. 9.2(A), onto the requirements of the FDCPA.  As we follow the argument,

Owens contends that Indiana procedure requires that the financing agreement be attached to the state-court complaint, and when it was omitted, the Act was violated because there was no "agreement" expressly authorizing fees, §1692f(1), and without an agreement, any claim for them violated §1692e(2)(A). This argument overlooks, however, that reasonable attorney fees were in fact "expressly authorized by the [financing] agreement," §1692f(1) and were therefore a legitimate element of LL Receivables's claim. Since reasonable attorney fees were "expressly authorized," Howe did not falsely represent their legal status under §1692e(2)(A).

This is not a case, as Owens seems to be advocating, where there was no agreement encompassing fees, yet the creditor is seeking them, a problem both §§1692e(2)(A) and 1692f(1) would presumably address. In fact, we know our case is different because Indiana law, the apparent starting point for Owen's analysis, expressly allows a case to proceed "without further pleading" even if an agreement is not attached. Ind. T.R. 9.2(F). In short, Indiana law, to the extent it is relevant, cannot be read to say that failing to attach a financing agreement to a complaint means, as a matter of law, that it does not exist.

Owens further argues, however, that even if Howe had attached the agreement to the state-court complaint, he still violated the Act by claiming entitlement to $2125 in attorney fees, a specific amount not "expressly authorized by the agreement," §1692f(1), as opposed to an amount to be determined by the state court, and that this misrepresented the "amount" or "legal status" of the debt in violation of 15 U.S.C. §1692e(2)(A).

In *Fields*, 383 F.3d at 564, the Seventh Circuit rejected the notion that debt collectors must seek court approval for a specific amount of attorneys' fees before including them in an account balance. While the Court there was speaking in the context of a collection letter, the

26

same reasoning applies to Howe's state court complaint.  In short, debt collectors are not obligated to go to court to fix the amount of fees every time they seek to enforce a contractual provision for them.  (*Id.*). Similarly here, to follow Owens's reasoning, a debt collector could never recite a specific amount for fees in a complaint until he obtained both a  judgment and specific court approval of them.  As in *Fields*, the Act does not require such an extraordinary result.  (*Id.*).  All that is required to comply with §§ 1692e(2)(A) and 1692f(1) is that there be some basic itemization of the various charges that comprise the total amount of the debt, *id.* at 566, and since that is what Howe did here, his complaint did not violate the Act on this basis.

If, however, what Owens is arguing is that since the financing agreement did not specify attorneys' fees in the exact amount now being sought, and because Howe is now seeking that specific amount he violated the Act, that too, is unpersuasive.  All that is required is that the debt collector state his fees in his communication to the debtor; the Act does not require that the underlying agreement anticipate and specify a specific fee.  (*Id.*).

Therefore, since Howe did not violate the Act as a matter of law for seeking attorney fees, summary judgment will be granted to him on this issue.

## 2.  A Complaint on a Credit Card, When the Debt is on a Car, is False and Misleading Under the Act as a Matter of Law

Owens next contends that Howe violated 15 U.S.C. § 1692e by filing a complaint labeled "Complaint on Credit Card," that alleged credit card indebtedness, when the debt actually originated from a defaulted car loan.

Section 1692e(2)(A) makes debt collectors strictly liable for even unintentional false statements.  *Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004); *see also Turner,* 330 F.3d

at 995 (determining whether a debt collector violates § 1692e requires an objective test that turns

on the question of whether the debt collector's communication would deceive or mislead an

unsophisticated but reasonable consumer).

The state court complaint indisputably contains false statements, and therefore clearly

misrepresents the "character" and "legal status" of the debt, § 1692e(2)(A), and naturally would

mislead an unsophisticated but reasonable consumer, *Randolph*, 368 F.3d at 730. Thus, on this

claim Owens is entitled to summary judgment as a matter of law under §1692e(2)(A).

3. **Suing the Wrong Lamont D. Owens Violated 15 U.S.C. §1692e(2)(A)**

The analysis employed earlier concerning Howe's August 26 letter carries forward to the

situation (particularly likely here given that no prior verification occurred) where the debt

collector sues the wrong person. *See Beattie*, 754 F.Supp. at 392.*; Blum v. Lawent*, No. 02-C-

5596, 2004 U.S. Dist. WL 2191612 at *1 (N.D.Ill. Sept. 27, 2004)(citing *Randolph,* 368 F.3d at

730 ("Debt collectors may not make false claims, period."). The case law on this issue focuses

on the debt collector's actions, and whether an unsophisticated consumer would be misled or

deceived by them. *See, e.g.*, *Kimber v. Fed. Fin. Corp.*, 668 F.Supp. 1480 (M.D.Ala.1987)(debt

collector's filing of a lawsuit on an apparently time-barred debt, without having first determined

after a reasonable inquiry that the limitations period had been tolled, was a violation of the

FDCPA).

In that regard, the only possible inference that arises, is that a reasonable, unsophisticated

consumer would be misled by the complaint. *Turner,* 330 F.3d at 995. Therefore, Howe is

strictly liable as a matter of law and summary judgment must be granted to Owens under 15

U.S.C. §1692e(2)(A).[14]

### D. THE PURSUIT OF THE "WRONG OWENS"

Finally, Owens contends that Howe violated 15 U.S.C. § 1692e by unreasonably pursuing him in state court after he provided verification that Howe had sued the wrong party. We think, however, this is really an argument for actual damages under 15 U.S.C. §1692k(a)(1). We recognize the claim this way because the defense costs, for instance, that Owens incurred in state court (as opposed say, to the attorney fees he has incurred in seeking a "successful action" here, 15 U.S.C. §1692k(a)(3)) would be one component of "actual damages." 15 U.S.C. §1692k(a)(1). Moreover, Owens does not point to any specific provision of §1692e he contends Howe violated by his dogged pursuit.

 Therefore, the Court will deny Owens' motion for summary judgment for liability on this claim.

### VII.  CONCLUSION

For the foregoing reasons, Howe's Motion To Dismiss (DE #27), which we have considered as a motion for summary judgment, is DENIED.  Further, because Howe is a debt collector under the Act as a matter of law, his Motion for Leave To Amend Answer (DE #51) to plead this so-called "affirmative defense" is DENIED.[15]

Howe's Motion for summary judgment (DE # 24)  is GRANTED and Owens's Motion (DE # 8) is DENIED on Owens's claim that the August 26 letter violates 15 U.S.C. §

---

[14] See, note 12, *supra*.

[15]Howe also sought leave of Court to file an additional Motion To Dismiss (DE # 48), which the Court denied on October 15, 2004.  Due to the Court's decision on the parties' cross-motions for summary judgment, there is no need to reconsider that prior ruling.

1692g(a)(1) by misstating the amount of the debt.

Owen's Motion (#8) is GRANTED and Howe's Motion is DENIED on the claim that the August 26 letter violates 15 U.S.C. § 1692e(11).

Owen's Motion (#8) is GRANTED and Howe's Motion is DENIED on the claim that the August 26 letter violated 15 U.S.C. § 1692e(2)(A) by falsely representing that this Lamont D. Owens owed the subject indebtedness.

Owen's Motion (#8) is GRANTED on the claim that Howe failed to verify the debt, thus violating 15 U.S.C. § 1692g(b), and Howe's Motion on that claim and on his affirmative defense of *bona fide* error, 15 U.S.C. § 1692k(c). is DENIED.

Howe's Motion for summary judgment (DE # 24) is GRANTED and Owens's motion (DE # 8) is DENIED on Owens's claim that Howe violated 15 U.S.C. §§ 1692e(2)(A) and 1692f(1) by seeking attorney fees in the state-court complaint.

Owen's Motion (#8) is GRANTED and Howe's Motion is DENIED on the claim that Howe violated 15 U.S.C. § 1692e(2)(A) by mistakenly suing this Lamont D. Owens, and also by including false representations in the state-court complaint about the character of the debt.

 Finally, Howe's Motion is GRANTED and Owen's Motion is DENIED on Owen's claim that Howe's continued pursuit of him in state court violated 15 U.S.C. § 1692e.


This case is set for a further scheduling conference for December 9, 2004, at 11:00 a.m. At that time the Court will establish a schedule and will address the question of settlement. The parties and counsel are to be present in person.

SO ORDERED.

30

Enter for November 8, 2004.


                                        s/ Roger B. Cosbey
                                        Roger B. Cosbey,
                                        United States Magistrate Judge