UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| LAMONT D. OWENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:04-CV-152 |
| | ) | |
| HOWARD HOWE, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

**I.  INTRODUCTION**

In a November 8, 2004, ruling on various motions, the Court partially granted motions for summary judgment filed by both Plaintiff Lamont D. Owens and Defendant Howard Howe. (DE # 59.) On February 1, 2005, a stipulated judgment (DE # 68) of $1,000 was entered in favor of Owens and against Howe for Howe's violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*  Owens almost immediately followed that success with a February 2, 2005, motion filed by his counsel, Jack E. Roebel, for attorney fees and costs under 15 U.S.C. § 1692k(a)(3). (DE # 69.)

In short, Owens seeks attorney fees of $18,042.50 and expenses of $592.98, for a total of $18,635.48.  Howe filed an extensive brief challenging both Roebel's hours and his hourly rate, but offered no objection to any of the costs.[1]  For the reasons provided, the Motion for Attorney

---

[1] Owens is a prevailing party under Federal Rule of Civil Procedure 54(d)(1), and his timely motion under Local Rule 54.1 incorporates an affidavit from Roebel that substantially complies with AO Form 133, the prescribed form for a bill of costs.  Moreover, Howe does not dispute that the listed costs are reasonable, correct, and necessarily incurred.  Finally, an examination of Roebel's affidavit reveals that nearly all the listed items fall within the costs allowed to a prevailing party by statute. *See* 28 U.S.C. § 1920. The only exceptions are Owens's claim for the reimbursement of some non-service related postage totaling $48.85 ($4.75+$4.75+$5.92+$15.75 + $17.68) and some office supplies for $10.00. Postage as a cost is generally denied because it is considered part of

Fees and Costs will be GRANTED in part and DENIED in part.

## II. FACTUAL AND PROCEDURAL BACKGROUND

As the Court noted in its November 8, 2004, Order, Owens pointed to four events as the basis for his FDCPA claim: first, Howe mistakenly sent to him, rather than the true debtor, an August 26, 2003, dunning letter ("the August 26 letter") which in itself contained two violations of the FDCPA; he then purportedly failed to verify the debt when asked to do so; next, he filed a complaint in state court against Owens, again the wrong one, which also allegedly contained two false and misleading representations; and finally, pursued the debt even after it became clear he had the wrong Lamont D. Owens.[2]

Howe also sought summary judgment, contending that there was no violation of the Act as a matter of law, but that first it should be dismissed under the *Rooker-Feldman* doctrine, or alternatively stayed through *Colorado River* abstention.

Ultimately, the Court rejected Howe's arguments concerning *Rooker-Feldman* and *Colorado River* abstention, as well as the affirmative defenses he raised. Concerning Owens's FDCPA claims, the Court granted summary judgment in his favor on the basis that: (1) the August 26 letter violated 15 U.S.C. § 1692e(11) by omitting a critical phrase; (2) the letter to the wrong Lamont D. Owens violated 15 U.S.C. § 1692e(2)(A); (3) failing to verify the debt before continuing collection activities violated 15 U.S.C. § 1692g(b); (4) filing a complaint labeled

---

an attorney's ordinary overhead. *See e.g., Altergott v. Modern Collection Techniques, Inc.*, 864 F. Supp. 778, 783 (N.D. Ill. 1994); *Hagan v. MRS Associates, Inc.*, 2001 WL 531119, at *11-12 (E.D. La. May 15, 2001). Office supplies fall into the same category. Since the Court has little discretion to award costs not authorized by statute, *EEOC v. Sears, Roebuck and Co.*, 114 F.R.D. 615, 621 (N.D. Ill. 1987), the cost award will be reduced by $58.85 and allowed in the amount of $534.13.

[2]The Court assumes the reader is familiar with the facts of the case as recited in the November 8, 2004, Order.

"Complaint on Credit Card," that alleged credit card indebtedness, when the debt actually originated from a defaulted car loan, violated 15 U.S.C. § 1692e; and (5) suing the wrong Lamont D. Owens violated 15 U.S.C. § 1692e(2)(A). Owens's remaining claims were rejected, and summary judgment was granted to Howe on them.

Although Howe had failed to comply with the FDCPA in five ways, the parties stipulated to a $1,000 judgment.[3]

Now Howe argues that Roebel's fees should be reduced because (1) the hours submitted for representing Owens in the state court action are not allowable under the FDCPA; (2) the bills submitted do not adequately specify the amount of time involved on each matter and, therefore, the Court cannot determine whether the requested fees are "reasonable"; (3) another attorney and possibly a law clerk provided some of the billed legal services; (4) a large portion of the hours spent on the case were excessive, redundant and unnecessary; (5) Owens's case was not complex and does not warrant the fees requested; (6) the judgment recovered, the significance of the legal issues raised, and the public purpose served do not warrant the claimed fees; and (7) Roebel's hourly rate is unreasonable and should be reduced to $225 per hour.

### III. STANDARD FOR ATTORNEY FEES UNDER THE FDCPA

A prevailing plaintiff in an FDCPA action is entitled to recovery of "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). A reasonable attorney's fee is mandatory when a plaintiff brings a successful action under the Act. *Zagorski v. Midwest Billing Services, Inc.*, 128 F.3d 1164, 1166 (7th Cir. 1997). Owens obtained a stipulated entry of judgment against Howe in the amount of $1,000, the

---

[3]We do not know which failure to comply with the FDCPA is the one to which the statutory damage award attaches under 15 U.S.C. § 1692k(a)(2)(a).

maximum amount of individual damages available under the FDCPA. 15 U.S.C. § 1692k(a)(2)(a). It is thus indisputable that Owens brought a "successful action" under the FDCPA. 15 U.S.C. § 1692k(a)(3). Accordingly, Owens is statutorily entitled to an award of reasonable attorney's fees and costs. *Arevalo v. National Credit Sys., Inc.*, 1998 WL 456541, at *2 (N.D. Ill. July 31, 1998).

The methodology to be applied to attorney fee awards under the FDCPA is the same that is used for claims under 42 U.S.C. § 1988. *See, e.g., Calkins v. Grossinger City Autocorp, Inc.*, 2003 WL 297516, at *1 (N.D. Ill. Feb. 12, 2003)(citing *Zagorski,* 128 F.3d at 1166)(applying the § 1988 methodology to attorney's fees under the FDCPA). The starting point for determining a reasonable fee is the lodestar, that is, the number of hours reasonably expended on the litigation multiplied by the attorney's reasonable hourly rate. *Riter v. Moss & Bloomberg, Ltd.*, 2000 WL 1433867, at *2 (N.D. Ill. Sept. 26, 2000)(citing *Hensley v. Eckerhart*, 461 U.S. 424, 433)(1983)).

In determining the reasonableness of the hours expended, the court considers several factors, including the time and labor required, the novelty and difficulty of the issues, the legal skill required, the reputation of the attorneys, the time burdens imposed by the client or the circumstances, and awards in similar cases. *Id.* (citing *Hensley*, 461 U.S. at 430 n.3). The "degree of success obtained" is the most important consideration when the court determines what is a reasonable fee award. *Id.* (citing *Hensley,* 461 U.S. at 436; *Tolentino v. Friedman*, 46 F.3d 645, 652 (7th Cir. 1995)). "Success is not measured only by the amount of recovery but also in terms of the significance of the legal issue on which the plaintiff prevailed and the public purpose the litigation served." *Id.* (quoting *Morales v. City of San Rafael*, 96 F.3d 359, 365, *as*

*am. on den. of reh'g and reh'g en banc*, 108 F.3d 981 (9th Cir. 1997)). The amount of attorneys' fees requested need not be proportionate to the settlement or judgment amount, however, as that would defeat the public benefit advanced by the litigation. *Id.* (citing *Dunning v. Simmons Airlines, Inc.*, 62 F.3d 863, 873 n.13 (7th Cir. 1995)).

The reasonable hourly rate used in calculating the lodestar figure should be based on the appropriate market rate for the attorney's work in the relevant community. *Arevalo*, 1998 WL 456541, at *2 (citing *Blum v. Stevenson*, 465 U.S. 886, 895 (1984)). "The market rate is 'the rate that lawyers of similar ability and experience in the community normally charge their paying clients for they [sic] type of work in question.'" *Calkins,* 2003 WL 297516, at *1 (quoting *Eddleman v. Switchcraft, Inc.*, 965 F.2d 422, 424 (7th Cir. 1992)). "The attorney's actual billing rate for comparable work is 'presumably appropriate' to use as the market rate." *Id.* (citing *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310 (7th Cir. 1996)). The burden of proving the market rate is on the party seeking the fee award. *Id*. (citing *Uphoff v. Elegant Bath*, 176 F.3d 399, 407 (7th Cir. 1999)). Once an attorney provides evidence establishing his market rate, the opposing party has the burden of demonstrating why a lower rate should be awarded. *Id.*

### IV. DISCUSSION

#### A. Roebel's Hourly Rate

Roebel maintains that his hourly rate should be $275, but he offers virtually no evidence to support it.  His affidavit merely recites that his "current hourly rate to clients for services in Federal Court is $275 per hour." (Roebel Aff. ¶ 4.)  However, he does not say that he has any clients who will actually pay such an hourly rate.

Moreover, an attorney's self-serving affidavit alone cannot satisfy the plaintiff's burden

of establishing the market rate for that attorney's services. *Spegon v. Catholic Bishop of Chicago,* 175 F.3d 544, 556 (7th Cir. 1999)(citing *Blum,* 465 U.S. at 895 n.11). In *Blum*, the Supreme Court indicated that to aid the court in determining the appropriate market rate for the services of an attorney, "the burden is on the fee applicant to produce satisfactory evidence--in addition to the attorney's own affidavits--that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* This is something Roebel has failed to do.

Ultimately, Roebel says that he thinks it is appropriate to charge a higher hourly rate to his clients for Federal cases. We do not know what his clients think about this, because he does not tell us. The record is also lacking any evidence from any other attorney in the legal community who tacks on a similar surcharge.

In the final analysis, Howe concedes that $225, the hourly rate that Owens normally charges for his services when provided in state court, is an appropriate hourly rate in the relevant legal community (*see* Def.'s Br. in Opp'n to Pl.'s Pet. for Fees and Costs at 12), and the Court concurs that such rate is reasonable. Therefore, we will use $225 as the hourly rate for calculating the lodestar.

### B. The Reasonableness of Hours Worked

Having fought tooth and nail on the merits, Howe strikes a similar stance on Owens's request for attorney fees, objecting to virtually every line item before launching into some general objections. The Court will address these objections largely in the order in which they are advanced, although it should be noted that some of the requested reductions apply more than once to the same line item.

Overall, Roebel's affidavit logs a total of 67.3 hours, a combination of time spent on defending the state court action (9.3 hours denoted by a **) and 58 hours in this Court. Howe objects, correctly we believe, to all of the state court time (which actually should total 10.8 hours – see Roebel's June 25, July 12, and November 10 entries), as this Court has already characterized those expenditures as "defense costs," and thus actual damages, and not attorney fees under 15 U.S.C. § 1692k(a)(3). (*See* November 8, 2004, Order at 29.) When Owens waived any actual damages, he passed up the opportunity to obtain these fees under 15 U.S.C. § 1692k(a)(1), and cannot now recast them as awardable under 15 U.S.C. § 1692k(a)(3). Of course, he can still pursue those fees in state court, where he has a counterclaim pending.

Howe also complains that a number of items listed by Roebel are inappropriately grouped such that it is impossible to determine the time spent on each activity, let alone whether the time was reasonable. Howe's solution is that Roebel suffer an across-the-board reduction in hours.

At issue here is whether the trial court should exclude from any initial fee calculation those hours that were "not reasonably expended." *Hensley,* 461 U.S. at 434. The Court might be more sympathetic to Howe's argument but for the fact that he turned the case into a rather large piece of work, first for Roebel and then for the Court. The Court has examined each of the entries Howe now complains about and overall believes that all of the time documented was "reasonably expended." Stated another way, although Roebel's time entries may not have the crisp precision that Howe would like, or perhaps what the Court would like in another context, overall the time incurred was reasonable and the Court will decline to impose any reduction.

Howe also complains about time that was apparently incurred by someone other than Roebel in connection with research (see the notation accompanying the October 8 and October

7

13 entries totaling 3.2 hours).  Roebel does not explain who was doing this research for him and certainly does nothing to justify that person charging a rate of $225 per hour. Since this time does not appear to have been "reasonably expended," or at least expended by Roebel, and because it is inadequately documented, the Court will exclude it in full.

Howe also complains that Roebel took too much time researching the legal issues in this case, approximately 15 hours, and that at least 5 hours should be deducted from the total.  The Court has examined Roebel's affidavit, and while one could quibble over some lack of detail overall, on the whole the time expended appears reasonable.[4] Indeed, Howe's objections on this score are a bit disingenuous given that his briefs were full of legal arguments that for the most part were unsupportable, but which still had to be addressed.  Therefore, it is not surprising that Roebel had to expend this amount of time removing so much legal underbrush.  Accordingly, the Court will make no further deduction than the 2 hours already disallowed.

Howe also complains about .5 hours logged by Roebel on June 2, 2004, concerning a Motion to Compel filed in the state court action, and since the Court has already disallowed all those entries as discussed *supra*, this entry does not need to be discussed further.

Howe objects to 3 hours spent by Roebel researching and drafting a Sur Reply on October 6, 2004, concerning the issue of *res judicata* because this briefing was "unnecessary." (*See* Def.'s Br. in Opp'n at 7.)  Apparently Howe forgets that this Sur Reply was submitted because he asked and was granted leave to file a Sur Response, and that the Court then granted Owens time to file a Sur Reply. (*See* September 28, 2004, Order.)  Obviously, Howe did not think at the time that his Sur Response was unnecessary, and the Court believed that Owens, who

---

[4]The Court has already disallowed the 2 hours claimed by Roebel on October 8, 2004, but apparently logged by "JBT."

had the ultimate burden of proof, should be given a final opportunity to reply. Although the Court agrees that more briefing than necessary was submitted in this case, the fault for that does not lie with Owens or Roebel. Accordingly, this time will not be disallowed.

Howe next objects to Owens filing a Motion for Summary Judgment on December 28, 2004, because in his view, the issue of damages was for the jury. According to Howe, the time spent by Roebel on December 15 and 16, 2004, was excessive and unnecessary given that the motion was ultimately rendered moot (*see* January 28, 2005, Order) and because a petition for attorney fees can only follow a judgment.

Owens offers no explanation for the filing of the motion, other than he was inspired to do so by some comments made at the December 9, 2004, scheduling conference where Howe discussed the possibility that he may file bankruptcy, and some unspecified statements by Howe during a later discussion. Clearly, following the November 8, 2004, ruling by the Court, Owens was entitled to judgment as a matter of law on his claim for statutory damages. 15 U.S.C. § 1692k(a)(2)(A). Beyond that, it was problematic that Owens would obtain actual damages, and it was certainly unlikely that he would obtain them on summary judgment. Moreover, his additional request for attorney fees as part of his motion was premature given that Rule 54 (d)(2)(B) first requires the entry of a judgment. Accordingly, by December 28, 2004, only a limited motion for summary judgment was warranted on Owens's claim for statutory damages, and he exceeded that by requesting actual damages and attorney fees. Therefore, to adjust the time spent to reflect this reality, the Court will reduce the December 15 and 16 entries by 50%, from 2.6 hours to 1.3.

Finally, Howe offers two overarching reasons for why the Court should reduce the

attorney fees here: (1) the case was straightforward and required minimal factual development; and (2) Owens only obtained partial success, as the FDCPA violations were only "technical" and the public purpose would be adequately served if the attorney fee award here were reduced to not more than $3,000.

Howe might have been right about the first point at one time, but not after he decided to add multiple layers of unnecessary complexity, arguing for example, that the *Rooker-Feldman* doctrine applied, or alternatively, *Colorado River* abstention. It is telling that, of the Court's thirty page opinion, eleven pages were consumed simply addressing Howe's Motion to Dismiss and his affirmative defenses. (*See* November 8, 2004, Order.) Unfortunately, Howe dragged Owens through this exhausting labor, and ultimately the Court too, with no real hope that any of his arguments would be successful. In any event, to say that the case was straightforward is to ignore Howe's concerted efforts to make it a long, hard, procedural and substantive slog.

Finally, Howe argues that because Owens was only partially successful the fee award should be slashed. This argument gets to the heart of the matter because the Supreme Court has stated that "'the most critical factor' in determining the reasonableness of the award 'is the degree of success obtained.'" *Zagorski*, 128 F.3d at 1166 (citing *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)(quoting *Hensley*, 461 U.S. at 436)). Success must be measured not only in the amount of the recovery, but also in terms of the principle established and the harm checked. *Id.* at 1167. Moreover, "the cumulative effect of petty violations . . . may not be petty, and if this is right then the mere fact that the suit does not result in a large award of damages or the breaking of new . . . ground is not a good ground for refusing to award any attorneys' fees." *Id.* (citing *Hyde v. Small*, 123 F.3d 583, 585 (7th Cir. 1997)). Nevertheless, the Court should "look at the

difference between the judgment recovered and the recovery sought, the significance of the legal issues on which the plaintiff prevailed and, finally, the public purpose served by the litigation." *Id.* at 1167 n.5.  Nevertheless, part of the legal calculus involves "the deterrent effect of the litigation" as "an important consideration when evaluating the 'degree of success' obtained by a particular plaintiff." *Id.* at 1167 n.6.

Thus framed, it is apparent that Owens obtained significant success despite losing on some of his claims. Owens's success is first demonstrated through his recovery of the maximum in statutory damages allowed under 15 U.S.C. § 1692k(a)(2)(A).

Even more importantly, however, this case reveals cumulative violations of the FDCPA the effect of which was anything but petty. *Zagorski*, 128 F.3d at 1166-67. The whole sad tale began with Howe's flawed August 26, 2003, dunning letter that he erroneously sent to the wrong Lamont D. Owens, 15 U.S.C. § 1692e(11), followed by his unfathomable failure to verify the debt when it became apparent that he was likely pursuing the wrong person, 15 U.S.C. § 1692g(b), leading ultimately to his careless decision to simply sue Owens in state court using an obviously canned, and incorrect complaint form. As the Court noted in its November 8, 2004, Order, one of the purposes of the verification requirement of the FDCPA is to put an end to erroneous dunning at an early point (*see* November 8, 2004, Order at 23), an obligation Howe simply ignored.[5]  In short, Owens brought forth significant legal issues upon which he prevailed.

Perhaps equally important, Howe's actions, whether through carelessness, stubbornness, or design, reveal why the FDCPA was first enacted, and why its protections are apparently still

---

[5]Howe obviously does a high volume of collection work, given that at the time he was pursuing over sixteen other "Owens." (*See* November 8, 2004, Order at 24 n.13.) This suggests that Owens has, through his pursuit of his FDCPA rights, uncovered some serious flaws in Howe's practice which have now hopefully been corrected. If so, the public interest will have been served. *Zagorski*, 128 F.3d at 1167 n.5

11

needed. The ability to effect a change, to compel compliance with the statute, would be seriously undermined if all Owens were entitled to was the maximum award of statutory damages. This is why the Seventh Circuit recognizes that the imposition of attorney fees has some deterrent effect, *Zagorski*, 128 F.3d at 1167 n.6, an effect that would be sorely blunted if the Court were to accept at face value Howe's suggestion that attorney fees should be capped here at $3,000. Accordingly, because Owens achieved substantial success, the Court will not further reduce the award of attorney fees from what is revealed by the earlier lodestar computation, discussed *supra*.

In sum, the Court will disallow 13.8 hours from the 67.3 hours claimed. This results in a total attorney fee award of $12,037.50 (53.5 hours at $225 per hour). As noted earlier, costs in the amount of $534.13 will be allowed.

## V. CONCLUSION

The Motion for Attorney Fees and Costs (DE #69) is GRANTED in part and DENIED in part. Attorney fees are allowed in the amount of $12,037.50 and costs are allowed in the amount of $534.13. The Clerk is directed to enter a judgment in favor of the Plaintiff and against the Defendant in the amount of $12,571.63. SO ORDERED.

Dated this 30th day of March, 2005.

s/Roger B. Cosbey
Roger B. Cosbey
United States Magistrate Judge
